**In re HAM CONSULTING COMPANY/WILLIAM LAGNION/JV, (Debtor).**

**No. 92–80579–LC7.**

United States Bankruptcy Court,
W.D. Louisiana,
Lake Charles Division.

July 27, 1992.

---

Keith A. Rodriguez, Lafayette, La., for Trustee.

Kent Aguillard, Eunice, La., for Energeco.

## REASONS FOR DECISION

HENLEY A. HUNTER, Bankruptcy Judge.

This matter comes before the Court on the Motion of the Debtor to Reject Leases and the motion filed by the Trustee, Mr. Max Morris, styled "Motion to Extend Time to Accept or Reject Unexpired Leases and Executory Contracts...." An opposition to the latter motion was filed on behalf of Energeco. The matter was originally set for an expedited hearing on June 18, 1992. After oral argument, the matter was re-fixed for further hearing on July 16, 1992, and a briefing schedule established. Briefs were filed. Oral argument was had on July 16, 1992. Appearances were made by counsel to the Trustee and Energeco. An appearance was made by counsel to Mr. James Hughes, a secured creditor, in support of the Trustee's Motion. No appear-ance was made on behalf of the Debtor. The matter was taken under advisement.

This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This Court has juris-diction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 22.01 incorporated into Local Bank-ruptcy Rule 1.2. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case originated as a voluntary peti-tion for relief under Chapter 11 in the United States Bankruptcy Court for the District of Nebraska filed on November 21, 1991. On April 16, 1992, the case was converted to a case under Chapter 7. On April 17, 1992, the matter was transferred to the Western District of Louisiana. Mr. Max Morris was appointed Trustee on April 22, 1992. Debtor's Motion to Reject was filed on June 11, 1992. The Trustee's Mo-tion for an Extension of Time was filed on June 12, 1992.

The Trustee's motion recites that "[a]s of the preparation of this particular motion, neither the Trustee nor undersigned coun-sel has had any real opportunity to exam-ine the assets of this Debtor. However, on information and belief there appear to be very valuable assets located in the Western District of Louisiana in the form of oil and gas wells." Motion, § 3.

The Trustee further alleges that various parties have contacted him concerning pay-ing the necessary sums to purchase the estate's interest in the wells. The Trustee further asserts that certain creditors might ultimately be required to contribute funds to complete the wells. *See Matter of Sen-ior–G & A Operating Company, Inc.*, 957 F.2d 1290 (5th Cir.1992).

The wells at issue are located in Vermillion Parish and Calcasieu Parish, Louisiana, and are, respectively, the G.B. Duhon, Well No. 1 and the W.R. Levering, Well No. 1. Debtor's schedules list the value of these properties at $4 Million and $6 Million, respectively.

Energeco's counsel admits at oral argument that it engaged in the practice of obtaining "top-leases" from various landowners. This practice relates to the obtaining of a mineral lease from a landowner predicated on the lapse of a prior lease in favor of another lessee. *See Scoggin v. Bagley*, 368 So.2d 763 (La.App. 2d Cir. 1979); *St. Clair v. Exeter Exploration Company*, 671 F.2d 1091 (8th Cir.1982).

The relationship of Louisiana mineral leases to 11 U.S.C. 365 has long been a matter of conjecture. In *Delta Energy Resources, Inc. v. Damson Oil Corp.*, 72 B.R. 7 (W.D.La.1985), the Court held:

"Under Louisiana law, a mineral lease is to be treated as a real right, an incorporeal immovable, which can be alienated and mortgaged to third parties. It is not the convential [sic] lease contemplated by Section 365, but is in fact a real right in favor of another."

72 B.R. at 11.

In *Matter of Topco, Inc.*, 894 F.2d 727 (5th Cir.1990), the Court held that a Texas oil and gas lease constituted a freehold interest. In a footnote, the Court observed that the Court made the following observation:

"Perhaps the greatest irony of this case is the fact that the Trustee did not need the bankruptcy court's permission to assume and assign Topco's oil and gas 'leases.' Section 363 generally authorizes trustees to sell, lease, or use property of the estate in the ordinary course of business without notice or heading. *Pride Exploration v. Marshall Exploration*, 798 F.2d 864, 866 n. 2 (5th Cir.1986) (trustee may transfer interest in oil and gas leases under Section 363(c)(1)). The Trustee mistakenly believed that he needed court approval to assume and assign these leases because they constitute unexpired nonresidential property leases covered by Section 365. Under that section, the trustee must move for permission to assume the lease, the bankruptcy court must conduct a hearing to determine any issues concerning adequacy of assurance of future performance, compensation for loss, the cure. If the bankruptcy court determines that assuming the lease will help the estate and the other parties involved in the lease are adequately protected, the court will grant the required approval. *See In re By–Rite Distributing*, 47 B.R. 660 (Bankr.D.Utah 1985), *reversed by* 55 B.R. 740 (D.C.Utah 1985) (court need not approve assumption or rejection within sixty day period, assumes court approval necessary).

While we interpret the Bankruptcy Code as a matter of federal law, state law determines whether these contracts constitute unexpired leases subject to Section 365....

In Louisiana, a mineral lease is a real right, an incorporeal immovable. *Delta Energy Resources v. Damson Oil Corp.* 72 B.R. 7, 11 (W.D.La.1985)...."

894 F.2d 727 at 739–740 (5th Cir.1990).

In *Texaco v. Louisiana Land and Exploration*, 136 B.R. 658 (M.D.La.1992), the Court distinguished the "real right" reasoning of *Topco* as it applies to a Louisiana mineral lease, notwithstanding the foregoing observation. *Texaco* relied upon *Topco* for the proposition that a Louisiana mineral lease was not an unexpired lease within the meaning of § 365. *Texaco* noted that the "real right" argument would be stronger if the interest at issue was a Louisiana mineral servitude. It noted "significant differences" between a mineral servitude and a mineral lease. Relying upon *Calhoun v. Gulf Refining Company*, 235 La. 494, 104 So.2d 547 (1958), the Court noted that the Louisiana Supreme Court has held that a "... lessee under a lease contract does not obtain a real right in the sense of absolute dominion, and a lease is not one of those real obligations which attach as a burden to the land, as does a servitude; in other words, a lease is not a *jus in re*, but a *jus ad rem*, a right upon

the thing...." *Id.* 104 So.2d at 551. The *Texaco* Court found further support for this disparate treatment in the decision of the Court of Appeal for the Third Circuit and the decision of the Supreme Court in *Succession of Simms,* 175 So.2d 113 (La. App. 4th Cir.1965); *affirmed* 250 La. 177, 195 So.2d 114 (1965); *cert. denied* 389 U.S. 850, 88 S.Ct. 47, 19 L.Ed.2d 120 (1967).

The Court in *Texaco* concluded:

"These Louisiana authorities make it plain that while the Louisiana mineral lease is more than an 'ordinary' lease, it does not convey any mineral estates or indeed, any title to the land-what the common law courts call 'determinable fee interests'.... Louisiana mineral leases are, therefore, quite different from Texas 'leaseholds.' Thus, the holding of *Topco* does not prevent classification of the Louisiana mineral lease as an 'unexpired lease,' although it is not authority to the contrary either. This Court need not resolve that issue because an unexpired lease is only one type of executory contract."

136 B.R. at 666–667.

Then, after an extended discussion of whether a Louisiana mineral lease is an executory contract, *Texaco* concludes: " ... [T]he Louisiana mineral lease is an 'executory contract' within the meaning of § 365(a)." *Id.* at 668.

Neither *Delta Energy* nor *Texaco* expressly deal with the issue of whether a Louisiana mineral lease falls within the protective ambit of § 365(c)(3). They do not decide the outcome if a party does not meet the requirement that an extension be obtained and there is no assumption of the lease within 60 days of the date of the order for relief. *See* § 365(d)(4). Indeed, a literal interpretation of the footnote in *Topco* would appear to allow the trustee to sell the interest under § 363 without any interplay with § 365.

While deciding that a mineral lease falls within the scope of § 365 as an executory contract, *Texaco* expressly does not decide

if a Louisiana mineral lease is an "unexpired lease." Under its holding, a Louisiana mineral lease is "... only one type of executory contract." *Delta Energy* suggests that it is not the conventional type of lease contemplated by § 365.

Reading this trilogy of cases leads this Court to conclude that a Louisiana mineral lease (albeit, under *Texaco,* a species of executory contract) is not afforded the protection due a lessor of non-residential real property under the foregoing provisions, regardless of whether it is, or is not, an "unexpired lease." Further, this Court holds that the trustee must ultimately obtain the court's approval of the assumption or rejection of the lease as an executory contract pursuant to § 365. The trustee may also be required to cure any default under Sub-section (b). What is *not* required is the Court's imprimatur on any extension of the time in which the Chapter 7 trustee is required to act post-conversion.

The provisions of § 365 relating to leases of residential and non-residential real property contemplate a landlord and tenant relationship.[1] Nothing in the nature of the Louisiana mineral lease is suggestive of such a relationship. A Louisiana mineral lease is "more than an 'ordinary' lease." 136 B.R. at 666. The Louisiana mineral lease imposes no affirmative duty on the mineral lessor other than warranty of title and non-interference. LSA–R.S. 31:119–120. The lessee has the right to explore for and produce minerals. LSA–R.S. 31:114. The obligations of the lessor and the lessee are, nonetheless, bilateral. But "virtually all performance is by the lessee." *Id.* at 668.

The ordinary real estate lease (residential or otherwise) is an altogether different contract. It affects the "letting out" of "houses and movables" or "predial or country estates." *Louisiana Civil Code* Article 2676. Those Articles contain no provisions regarding the exploration or extraction of

---

1. *See Louisiana Civil Code* (1992), C.C. Articles 2692–2709—Of the Obligations and Rights of the Lessor; Articles 2710–2726—of the Obligations and Rights of the Lessee.

minerals.[2] For example, if a mineral lease is not assumed and performed, the trustee cannot effectuate a "surrender [of] such nonresidential real property to the lessor" as is contemplated by § 365(d)(4).

The amendments to 11 U.S.C. § 365 concerning unexpired real property leases represent a substantial revision of same. They were enacted to address concerns of lessors of commercial property. Special treatment was added for lessors of real property in shopping centers. Prior to the amendments, unexpired leases were treated differently in Chapter 7 than under Chapters 9, 11 and 13. The legislative history reflects a concern with the payment of rent, common-area charges and other charges by debtor-tenants. *See In re Cook United, Inc.*, 83 B.R. 456 (Bkrtcy.N.D.Ohio 1988), *In re By–Rite Distributing, Inc.*, 47 B.R. 660 (Bkrtcy.D.Utah 1985); *rev'd on other grounds*, 55 B.R. 740 (D.Utah 1985); *In re M.H.I., Inc.* 61 B.R. 69 (Bkrtcy.D.Md. 1986.) These are not the duties of the lessee contemplated by the Louisiana mineral lease.

■ This Court concludes that a Louisiana mineral lease is not an unexpired lease for purposes of the application of § 365(d)(4). All that is required is that the Trustee exercise what is described as the "business judgment" on the ultimate issue of assumption or rejection. The "business judgment" test may be described as the majority view of the appropriate test on the assumption/rejection issue. *See Collier on Bankruptcy*, (15th Edition, § 365.03). *See also*, Andrew, Executory Contracts in Bankruptcy: Understanding 'Rejection,' 59 *U.Colo.L.Rev.* 845 (1988).

■ Thus, this Court concludes that the Trustee here was not required to affirmatively seek any extension under § 365(d)(4). Were, however, such authorization required, this Court would hold that the trustee's request here was timely filed. The 60 day period runs from the conversion of the case to Chapter 7. *In re Greco*, 113 B.R. 658 (D.Hawaii 1990); *In re Reef Pe-*

troleum, *Corp.*, 99 B.R. 355 (Bkrtcy. W.D.Mich.1989); *Matter of Joyner*, 74 B.R. 618 (Bkrtcy.M.D.Ga.1987). The sixty day period is tolled by the filing of the motion; it is not required that the extension be granted within such time. *Id.* Since "... the meaning of section 365(d)(4) is not 'entirely clear' ... a liberal interpretation of the statute is necessary in order to effectuate the intent of Congress." *Matter of American Healthcare Management, Inc.*, 900 F.2d 827 (5th Cir.1990), *quoting Chapman Inv. Assocs. v. American Healthcare Management, Inc.*, 94 B.R. 420, 422 (N.D.Tex.1989). More than one extension may be granted for cause. *Id.*

Counsel for Energeco raises issues, either in brief or in oral argument, which deserve some mention. The first is the contention that the sixty day period runs from the date of the order for relief. These reasons have already noted that the period runs from the date of conversion. The second issue raised is the nature of the debtor. Counsel argues that lessees of the subject leases are one Ham and one Lagnion, not "Ham Consulting Company/William Lagnion/JV." Counsel argues that the leases are not property of the estate. It should be noted that the concept of property of the estate is broad. 11 U.S.C. § 541, *See United States v. Whiting Pools, Inc.* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Counsel also argues that the case is incorrectly filed as a joint petition and that "serious consideration should be given to dismissal." See § 302. *Brief on Behalf of Energeco*, filed July 13, 1992, page 4. None of these issues are presently poised for a determination.

■ Finally, the debtor's motion is easily disposed of. While it could be dismissed for lack of prosecution, it is far more important to note that the debtor lacks standing to assume or reject an executory contract once the case is converted. "The decision to assume in a Chapter 7 is solely the trustee's." *In re Del Grosso*, 115 B.R. 136 (Bkrtcy.N.D.Ill.1990).

**2.** Louisiana has specific legislation regulating minerals. *See Louisiana Mineral Code*, LSA– R.S. 31:1, *et seq.*

CONCLUSION

For the reasons previously set forth, the Trustee's Motion for an Extension of Time to assume or reject is granted. The Debtor's Motion to Reject is dismissed. A separate, conforming order will enter.