HUTCHINSON, Circuit Judge,
dissenting.
I respectfully dissent from the Court’s order and opinion in this case. I do so because I believe § 365(d)(4) of the Bankruptcy Code unambiguously authorizes the bankruptcy court to grant only a single extension of time for a debtor to decide whether to assume or reject an unexpired lease of nonresidential real property. Even if the statute did permit multiple extensions, I do not believe that cause to justify the bankruptcy court’s order granting the debtor a second extension of time is present here. Therefore, I would vacate the order of the district court and remand the case to it with instructions to reverse the order of the bankruptcy court granting the debtors a second extension.
A central issue in this case is whether § 365(d)(4) is ambiguous. See Mellon Bank v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir.1980) (term is ambiguous if susceptible to two reasonable alternative interpretations). We have applied the following principles in determining ambiguity:
[I]f the statutory language is clear and plain, a court must give it effect unless the legislative history is such that a literal reading “will produce a result demonstrably at odds with the intention of [the] drafters,” [Griffin v. Oceanic Contractors, Inc.,] 458 U.S. [564,] 571 [102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) ], or in other words, “would thwart the obvious purposes of the ... [statute].” Mansell v. Mansell, [490 U.S. 581, 592, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675] (1989)....
Smith v. Fidelity Consumer Discount Co., 898 F.2d 907, 910 (3d Cir.1990) (parallel citations omitted).
Section 365(d)(4) states in pertinent part: [I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such sixty-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.
11 U.S.C.A. § 365(d)(4) (West 1993) (emphasis added). As the Court seems to recognize, the plain meaning of the emphasized language limits the bankruptcy court to granting a single extension of time within the initial sixty-day period during which a debtor would otherwise have to decide whether to assume or reject an unexpired lease of commercial real estate.
In re Coastal Industries, Inc., 58 B.R. 48 (Bankr.D.N.J.1986) aptly makes this point. The debtor there, like the debtors in the present case, had filed a second motion *690 to extend. The second motion was filed before the expiration of the time allowed by the first extension, but after the expiration of the’ initial sixty-day period. The bankruptcy court denied the debtor’s second motion because the “language in fixing the time within which the debtor must act is unequivocal” and the court “would truly be gazing with a jaundiced eye were it to perceive some ambiguity within § 365(d)(4).” Id. at 50.
This Court now states, to avoid the effect of the text, “[I]f Congress had wanted to eliminate all possible delay beyond the 60-day period, it could have simply prohibited all extensions[.]” Supra at 687-88. There was no need, however, for Congress to restate the principle that a bankruptcy court may grant only one extension under § 365(d)(4). It had already said so. Additional statement would have been redundant.
As the Court also recognizes, the legislative history of §'365(d)(4) contains no indication that the statute does not mean what its plain text says. Section 365(d)(4) was enacted in 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act, Pub.L. 98-353, 98 Stat. 333, sec. 362. Before its enactment, Chapter 11 debtors had no fixed deadlines for assuming or rejecting unexpired leases. Thus, as the Court puts it, “Section 365(d)(4) was clearly intended to impose some restrictions on the time within which a trustee must decide whether to assume or reject a covered lease[.]” Supra at 685 n. 3. It is acknowledged that this restrictive purpose appears not only in the unequivocal language of the statute itself, but also in its legislative history. See supra at 686. Thus, the Court quotes comments by Senator Hatch as some indication of general congressional sentiment regarding § 365(d)(4). I repeat them here:
The bill would lessen the problems caused by extended vacancies and partial operation of tenant space by requiring that the trustee decide whether to assume or reject nonresidential real property lease within 60 days after the order for relief in a case under any chapter. This time period could be extended by the court for cause, such as in exceptional cases involving large numbers of leases. One of the minor changes in this subtitle was to limit it to nonresidential real property leases. If the lease is not assumed or rejected within this 60-day period, or any additional period granted by the court, the lease is deemed rejected and the trustee must immediately surrender the property to the lessor.
Supra at 685 n. 2 (quoting 130 Cong.Rec. S8894-95 (daily ed. June 29, 1984), reprinted in 1984 U.S.Code Cong. & Admin.News 590, 599) (emphasis deleted).
I also think the Court’s interpretation of § 365(d)(4), to give a debtor an opportunity for multiple extensions of time, hinders accomplishment of the main purpose of the statute. Multiple opportunities for extension allow a debtor to speculate on the market for commercial real estate during the prolonged period of uncertainty about the tenant’s election to accept or reject the leasehold. The landlord has no such opportunity. It must simply wait and suffer the uncertainty of the market risk that the debtor avoids while delaying decision. So long as unilateral power to accept or reject a lease remains in the debtor, mutuality of obligation is absent. I think Congress, in enacting § 365(d)(4), wanted to put limits on that unilateral power and to do so said, in effect, to debtors who are lessees of commercial real estate — at the time you seek the protection of a bankruptcy court, decide within sixty days whether you want to continue your commercial leases with both their obligations and their benefits or else persuade the court within that sixty days that you need more time.
I realize that there is some force in the Court’s observation that a prolonged lack of mutuality is possible even under my interpretation of § 365(d)(4) because that section does not limit the length of the first extension. See supra at 687-88. Despite that observation’s initial appeal, I do not think it overcomes the statute’s unambiguous text. Moreover, the statute’s limiting purpose is still served, at least in part, by allowing only one extension. If that single extension must be granted within sixty *691 days of a petition for reorganization, the landlord knows soon after bankruptcy precisely when his uncertainty will end and the debtor also knows when he must act to affirm or reject. This shared knowledge assists both parties in planning their affairs and it limits the possibility that one party, the tenant, can continue to free itself of market risk as it continues to monitor market conditions at the other party’s expense.
The Court reasons that interpreting § 365(d)(4) as permitting only one extension within the initial sixty-day period “would also appear to mean that a bankruptcy court, once the sixty-day period ended, could not shorten any extension granted before that period expired.” See supra at 687-88 (emphasis in original). The language of the statute, however, unequivocally addresses only the time within which a bankruptcy court may fix additional time for the debtor to act to accept or reject the lease. It does not prohibit the bankruptcy court from shortening an extension properly granted within the first sixty-day period. The reason for the absence of such a prohibition is logically tied to the statute’s legislative purpose of preventing undue delay by the debtor in accepting or rejecting a lease. If the circumstances that warranted the extension change, thus rendering the additional time unnecessary, the language of § 365(d)(4) does not prevent the bankruptcy court from entering an order shortening the extension of time that it granted for the debtor to act.
Thus, the Court’s interpretation of § 365(d)(4), permitting the bankruptcy court to grant multiple extensions of time after the expiration of the initial sixty-day period, seems to me inconsistent with the statute’s plain meaning and purpose. It is also unsupported in the legislative history. Accordingly, I do not think it is likely to be right. See Government of the Virgin Islands v. Knight, 989 F.2d 619, 633 (3d Cir.1993) (construction inconsistent with statute’s plain meaning is justifiable only when clear indications of contrary legislative intent exist) (citing Consumer Party v. Davis, 778 F.2d 140, 147 (3d Cir.1985)).
If we read § 365(d)(4) naturally, to permit only one extension of the sixty-day period in which to assume or reject a lease, we are faithful to both the plain language of the text and its purpose. While absence of mutuality of obligation between the debtor and the lessor would still exist initially, uncertainty is reduced. By the same token, a stand-still agreement compelled by law remains in place to meet the debtor’s need for time to sort out its obligations; that stand-still agreement is subject to reasonable extension if extension is needed and promptly sought.
Moreover, even if the statute did permit multiple extensions, it still would require cause for all extensions. Here, I do not think there is cause for granting the second extension. I appreciate the complexity of the debtors’ reorganization, involving, as it does, more than two hundred leases. That complexity justified the first extension; however, by the time the debtors moved for the second extension, they had already determined that the Brandywine lease had “substantial value” because the rent required was less than the fair value of the lease term. If the debtors ultimately decide to file a reorganization plan that does not include continued operations on the Brandywine premises, they can sublet at a profit. They cannot lose. The bankruptcy court recognized this when it directed the debtors to assume the lease because it was “certainly a valuable asset.” Accordingly, these debtors have not met the statutory requirement of showing cause for the second extension.
In sum, both the language and legislative history of § 365(d)(4) indicate that a bankruptcy court may grant only a single extension of time within which a debtor must determine whether to accept or reject an unexpired nonresidential lease and that extension must be granted within the initial sixty-day period. Furthermore, even if multiple extensions were permissible, these debtors have no cause which could justify the second extension the bankruptcy court granted them. I would therefore reverse the district court’s order affirming the bankruptcy court.