In re DCT, INC., Debtor.

In re MSPC, LLC., Debtor.

Nos. 02–43666–R, 02–44524–R.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

May 29, 2002.

field, MI, Timothy A. Fusco, Troy, MI, Michael C. Hammer, Detroit, MI, Wallace M. Handler, Southfield, MI, Jeffrey W. Hartkop, Sterling Heights, MI, Robert S. Hertzberg, Pepper Hamilton LLP, Detroit, MI, Rose A. Houk, Lansing, MI, Daniel M. Katlein, Detroit, MI, Kristi A. Katsma, Birmingham, MI, Matthew Kye, Pitney, Hardin, Kipp & Szuch, New York City, David A. Lerner, Bloomfield Hills, MI, Bernard T. Lourim, Detroit, MI, Margaret A. Lynch, Birmingham, MI, Anthony G. Mammina, Birmingham, MI, Ralph E. McDowell, Detroit, MI, Charles Milne, Troy, MI, James A. Plemmons, Detroit, MI, Asher Rabinowitz, Detroit, MI, Steven A. Siman, Troy, MI, Kurt A. Steinke, Sterling Heights, MI, Robert A. Weisberg, Birmingham, MI, Ronald C. Wernette, Jr., Bowman and Brook LLP, Detroit, MI, Matthew Wilkens, Detroit, MI, for creditor.

Mark H. Shapiro, Southfield, MI, Daniel J. Weiner, Bloomfield Hills, MI, for trustee.

David Murphy, Pepper, Hamilton & Scheetz, Detroit, MI, pro se.

*Supplemental Opinion Denying Motion to Extend Deadline*

STEVEN W. RHODES, Chief Judge.

These two cases came before the Court on separate motions to extend the deadline to assume or reject leases of nonresidential real property. These cases are unrelated, however, the Court is issuing a joint opinion because the identical issue came before the Court simultaneously in each case.

The DCT chapter 7 petition was filed on February 20, 2002. The trustee filed his motion to extend the deadline to assume or reject under 11 U.S.C. § 365(d)(4) on April 19, 2002, 58 days after the order for relief. Although the trustee sought expedited

Mark A. Aiello, Foley & Lardner, Detroit, MI, Julie C. Canner, Southfield, MI, Patrick Casey Coston, Pepper Hamilton LLP, Detroit, MI, Michael G. Cruse, Bloomfield Hills, MI, Earle Erman, South-

consideration of the motion, he did not request that the matter be heard within 60 days of the order for relief.

The MSPC chapter 11 petition was filed February 25, 2002. MSPC filed its motion to extend the time to assume or reject on April 25, 2002, 59 days after the order for relief. MSPC made an oral request that the motion be heard on an expedited basis, but also did not request that it be heard within 60 days of the order for relief.

Both matters were scheduled for hearing on April 29, 2002, more than 60 days after the order for relief in each case. At the conclusion of the hearing, the Court denied both motions, holding that pursuant to the plain meaning of 11 U.S.C. § 365(d)(4), an order to extend the deadline to assume or reject a nonresidential lease must be entered within 60 days after the order for relief. This opinion supplements the Court's decision given in open court on April 29, 2002.

## I.

■ 11 U.S.C. § 365(d)(4) provides:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

Courts are divided as to whether the statute requires entry of the order extending the deadline within the 60 day period. Courts holding that the statute is unambiguous and requires entry of a court or-der within the 60 day period include: *Debartolo Properties Mgmt., Inc. v. Devan,* 194 B.R. 46, 51 (D.Md.1996) ("The statutory language is clear and unambiguous. It provides that the bankruptcy court must fix an additional period of time for the assumption or rejection of leases within the period previously set for assumption or rejection."); *In re Horwitz,* 167 B.R. 237, 242 (Bankr.W.D.Okla.1994) ("In section 365(d)(4) of Title 11 Congress has provided an absolute rule which does not authorize me to employ any discretion or to apply any equitable principles."); *In re Simpson,* 1994 WL 114693, *2 (Bankr.W.D.Okla. Mar.25, 1994) (Section 365(d)(4) is "clear and unambiguous," and "requires the motion to extend and the court's order allowing the extension to occur within the original 60 days."); *In re House of Deals of Broward, Inc.,* 67 B.R. 23, 24 (Bankr. E.D.N.Y.1986) (The language of § 365(d)(4) is very clear and requires that any extension of time be granted within the initial 60–day period.); *In re Coastal Industries, Inc.,* 58 B.R. 48, 49–50 (Bankr. D.N.J.1986) ("The mandate of § 365(d)(4) is unequivocal in that it demands either assumption, rejection, or a fixing of additional time within that sixty-day time frame.... The Court would truly be gazing with a jaundiced eye were it to perceive some ambiguity within § 365(d)(4)."); and *In re Taynton Freight System, Inc.,* 55 B.R. 668, 671 (Bankr.M.D.Pa.1985) (The language of § 365(d)(4) is clear that "if the Court is to grant an extension of time beyond 60 days, this must occur before the 60 day period expires.").

Other courts, however, have found the statute ambiguous and have concluded that Congress could not have intended that a debtor would forfeit substantial rights merely because the court failed to act within the 60 day period. *See Southwest Aircraft Services, Inc. v. City of Long Beach (In re Southwest Aircraft Services,*

*Inc.)*, 831 F.2d 848, 849, 853 (9th Cir.1987), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988) ("[T]he meaning of the words of section 365(d)(4) is not entirely clear.... [T]he interpretation we believe best comports with congressional intent is the one that preserves the authority of the bankruptcy court to rule on timely filed motions."); *In re Southern Technical College, Inc.*, 148 B.R. 550 (Bankr. E.D.Ark.1992) (Adopting the reasoning of *Southwest Aircraft Services*.); *In re Perfectlite Co.*, 116 B.R. 84 (Bankr.N.D.Ohio 1990); *In re Cook United, Inc.*, 83 B.R. 456 (Bankr.N.D.Ohio 1988).

In *Perfectlite*, the court did not actually find the statute ambiguous, but nevertheless opted to follow the holding of *Southwest Aircraft Services*, stating that the "conclusion seems so sound and sensible—albeit somewhat difficult to reconcile with the language of section 365(d)(4)—that this Court intends to follow the Ninth Circuit view unless and until contrary authority emerges in this circuit binding on this Court." *Perfectlite*, 116 B.R. at 86.

In *Southwest Aircraft Services*, the court explained the perceived ambiguity as follows:

> Section 365(d)(4) provides that any unexpired nonresidential lease is deemed rejected unless the debtor-lessee assumes it "within 60 days after the date of the order for relief, *or within such additional time as the court, for cause, within such 60–day period, fixes....*" 11 U.S.C. § 365(d)(4) (emphasis added). Under the section, the court's ability to extend the 60–day period is limited by a clause which includes three successive terms: "for cause," "within such 60–day period," and "fixes." It is not entirely clear whether the second term—"within such 60–day period"—

modifies the term that precedes it or the term that follows it.

*Id.* 831 F.2d at 850.

Having found an ambiguity in the statute, the court chose to interpret the term "within such 60–day period" as modifying the term "for cause." That way, "while the cause must arise within 60 days (and implicitly the debtor must file its motion to show cause within that period), there is no express limit on when the bankruptcy court must hear and decide the motion. This more liberal reading of the statute would allow the bankruptcy courts to operate with greater freedom and flexibility." *Id.*

In *In re Travel 2000, Inc.*, 264 B.R. 451 (Bankr.W.D.Mich.2001), the court stated:

> As evidenced by the split among the courts, 11 U.S.C. § 365(d)(4) is not plainly susceptible to only one interpretation.... There can be no doubt that Congress intended to give debtors a full 60 days in which to decide whether to assume or reject. Requiring the Court to both consider and rule on the assumption/rejection issue within the same 60 days effectively truncates the time statutorily allotted the debtor to decide its course of action.

*Id.* at 453–54.

## II.

The Court disagrees with the holdings in *Southwest Aircraft Services, Travel 2000* and the other cases finding ambiguity in the statute. The statute is not ambiguous. The term "within such 60–day period" can only modify "fixes." Interpreting it as modifying "for cause" is a tortured, unnatural construction. *See e.g. Legacy, Ltd. v. Channel Home Ctrs., Inc. (In re Channel Home Ctrs., Inc.)*, 989 F.2d 682, 686–87 (3d Cir.1993) ("To use the words 'cause ... within such 60–day period' to mean 'a cause that exists or arises within the 60–

day period' is unnatural, unclear, and unnecessary" and is "inconsistent with accepted usage.").

■ If a statute is clear and unambiguous, it must be enforced according to its terms, except in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982); *See also United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) *quoting Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) ("[W]here … the statute's language is plain, the 'sole function of the courts is to enforce it according to its terms.' ").

Requiring a court order extending the deadline within the 60 day period does not conflict with or contravene the intent of § 365(d)(4). *See Debartolo Properties,* 194 B.R. at 52. ("The policy behind § 365(d)(4) … is to force debtors to make early decisions about unexpired leases, and to permit extensions of the sixty day election period only with the permission of the bankruptcy court. The plain statutory language, requiring the bankruptcy court to act within the existing election period, furthers that policy.").

■ Because DCT and MSPC did not obtain extensions of time within the initial 60-day period, the leases are deemed rejected. This result may seem harsh. However, it could have been avoided had the parties sought relief earlier or requested hearings within the initial 60-day period. Moreover, a harsh result is not a basis for the Court to ignore the plain language of the statute. In *Palmer v. United States (In re Palmer),* 219 F.3d 580 (6th Cir. 2000), the Sixth Circuit stated:

[O]ur own cases have expressed an extreme reluctance to amend the Bankruptcy Code from the bench. Rather, our cases demonstrate that we will read the Bankruptcy Code "in a 'straightforward' manner," *Smith v. United States (In re Smith),* 96 F.3d 800, 803 (6th Cir.1996) (*quoting Bartlik v. United States Dept. of Labor,* 62 F.3d 163, 167 (6th Cir.1995)), and apply the plain meaning of the Code wherever possible. *See Dublin Securities, Inc. v. Helmer (In re Dublin Securities, Inc.),* 214 F.3d 773, 774 (6th Cir.2000) (applying plain language of § 546(a) of Bankruptcy Code to find that two-year limitations period begins running upon appointment of trustee); *Foremost Mfg.,* 137 F.3d [919] at 923 (citing *Ron Pair Enters.,* 489 U.S. at 240–44, 109 S.Ct. 1026, and applying plain meaning of § 506(c) of Bankruptcy Code to reverse bankruptcy court's imposition of administrative surcharges); *Rogers v. Laurain (In re Laurain),* 113 F.3d 595, 600 (6th Cir. 1997) (applying plain meaning of Fed. R.Bankr.P. 4003(b) to 30-day period during which court may grant motion to extend time for filing objection to debtor's claim of exemption, even though "a literal reading of Rule 4003(b) may be impractical and unfair"); *Smith,* 96 F.3d at 802 (interpreting two-year limitations period of § 523(a)(1)(B)(ii) strictly and declining to apply "mailbox rule" to filing of tax returns); *Aberl,* 78 F.3d [241] at 244 (applying plain language of § 507(a)(7)(A)(ii) to reject IRS's argument that pre-assessment offer in compromise tolls running of 240-day limitations period).

*Id.* at 586–87 (footnote omitted). *See also Horwitz,* 167 B.R. at 240 ("[I]f application of the law causes untoward, unwelcome, arbitrary or fortuitous results it is for Congress to deal with any perceived bad policy.").

The reference in *Palmer* to its prior decision in *Laurain* is particularly telling. In *Laurain,* the Sixth Circuit strictly construed almost identical language in the version of Fed.R.Bankr.P. 4003(b) then applicable. *Laurain,* 113 F.3d at 600.

Accordingly, the motions to extend the deadline to assume or reject under § 365(d)(4) are denied.